SOLOMON J. FAGUE *vs.* WILLIAM W. CORCORAN.

LAW. No. 23,168.

{ Decided March 31, 1884.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

1. In the correction and revision of erroneous special assessments for street improvements, the District Commissioners had adopted a general rule whereby a certain class, known as "Henry Cooke" assessments were uniformly reduced two-thirds of the original sum. F., who was attorney for C. in the prosecution of claims for the reduction of over assessments upon C.'s property, included in his bill for services a charge of ten per cent. upon the amount saved to C. by the reduction of these "Henry Cooke" assessments. *Held,* That unless there was some proof of services rendered by F. in effecting this reduction, he would not be entitled to recover this item of his bill.

2. Nor can recovery be had on a like charge for reductions claimed to have been effected on certain assessments, where an act of Congress is required before any credits for such reduction can be realized and no such act has been passed.

3. Where, also, certain assessments had been cancelled by a general order of the Commissioners, compensation cannot be had on account of the cancellation without showing that the plaintiff's services were directed to securing it.

4. Where the declaration consists of the common counts, with a bill of particulars annexed, no recovery can be had for services not included among the items of charges contained in the bill of particulars. The latter defines the application of the common counts, and is a part of the pleading under our system. It apprises the defendant what it is the plaintiff expects to recover on, and if the bill contains no such item, no recovery can be had, even if the services were in fact rendered.

5. But the court may, on a new trial being granted, allow an amendment of the bill of particulars, so as to include such a charge.

STATEMENT OF THE CASE.

The plaintiff brought this action to recover of the defendant $3,356.43, under the following declaration and bill of particulars:

"The plaintiff sues the defendant for money payable by the defendant to the plaintiff for goods sold and delivered by the plaintiff to the defendant, and for work done and material provided by the plaintiff for the defendant at his request, and for money lent by the plaintiff to the defendant; and for money paid by the plaintiff for the defendant at his request; and for money received by the defendant for

the use of the plaintiff; and for money found to be due from the defendant to the plaintiff on accounts stated between them; and the plaintiff claims $53,356.43, with interest from the 15th day of September, A. D. 1881, according to the particulars of demand hereto annexed.

"2d. The plaintiff also sues the defendant for a further sum of indebtedness due the plaintiff from the defendant, to wit, the sum of $3,356.43, with interest from the 15th day of September, A. D. 1881, for the work, labor, care and diligence and attendance of the plaintiff by the plaintiff done, performed and bestowed as the agent of and for the defendant, at his special instance and request, evidenced by his certain powers of attorney to defendant, and by verbal requests made by defendant to and of plaintiff from time to time to so act for him the said defendant, in and about preparing, presenting, filing and prosecuting before the late Board of Audit of said District, and before the Board of Commissioners of said District, defendant's claims for damages to defendant's real property, and to real property in which defendant was interested, for old material of defendant taken from in front of defendant's real property, and for erroneous or excessive charges in certain special assessments against said property of defendant, and against said property in which defendant was interested; and, further, for certain commissions and awards upon the sums awarded or allowed by said boards in, about and concerning said claims so prepared, presented, filed and prosecuted as aforesaid; and he, the said defendant, faithfully promised the said plaintiff to pay him so much money as he therefore reasonably deserved to have of the said defendant, and when he, the said defendant, should be thereunto afterwards requested. And the plaintiff avers that he therefore reasonably deserved to have of the said defendant the said sum of $3,356.43, the same being ten per cent. of the award or allowances aforesaid made by said boards in respect to the claims aforesaid prepared, presented, filed and prosecuted aforesaid in respect to the property mentioned and set forth in the particulars of demand in respect to said allowances

or awards hereto annexed, and hereby made part hereof the said sum of \$3,356.43, being the net amount of said ten per cent. after crediting said defendant with certain payments thereon on account thereof made by defendant from time to time, and as set forth in said particulars of demand. Nevertheless, the said defendant, not regarding his several promises and undertakings in and about the premises, but contriving and fraudulently intending, craftily and subtly, to deceive and defraud the plaintiff in this behalf, has not as yet paid said sum of \$3,356.43, or any part thereof, although said defendant afterwards, to wit, on the 15th day of September, A. D. 1881, was requested by said plaintiff so to do ; but the said defendant to pay the same has hitherto wholly neglected and refused, and still does neglect and refuse, to the damage of the said plaintiff, of \$3,356.43, with interest thereon from the 15th day of September, A. D. 1881 ; and therefore he brings suit.

### *Bill of Particulars.*

| | | |
|---|---:|---:|
| Total reductions by Commissioners............ | \$30,811 | 91 |
| Balance Louise Home ordered by act of Congress. | 6,687 | 63 |
| Am't damage before Board of Audit on Lot 10, sq. | 400 | 00 |
| | \$37,899 | 54 |

W. W. Corcoran to S. J. Fague, *Dr.:*

| | | |
|---|---:|---:|
| To 37,899.54 com'n at 10 p. ct. ................ | \$3,789 | 95 |
| Writing up statement and furnishing data sq. 212, and so. of 212........................ | 50 | 00 |
| | \$3,839 | 54 |

*Cr.*

| | | |
|---|---:|---:|
| By cash at various times.................... | 450 | 00 |
| Balance due.......................... | \$3,389 | 54 |
| By error in sq. 575, lot 9.................... | 33 | 72 |
| | \$3,355 | 82 |

WASHINGTON, D. C., *Sept.* 6, '81.
W. W. Corcoran to Solomon J. Fague, *Dr.:*

To services before the Board of Audit in filing bills and prosecuting same continuously before the Commissioners of the Dist. of Columbia.

| | | |
|---|---:|---:|
| Am't reductions, $37,499.54................... | $3,749 | 95 |
| Writing up statement in reference to action of Board of Audit on sqr. 212, and south of said square between 14th and 15th streets........ | 50 | 00 |
| Damages on lot 10, sqr. 196, $400............. | 40 | 00 |
| | $3,839 | 95 |

*Cr.*

By cash—

| | | | | |
|---|---:|---:|---:|---:|
| Oct. 30, '75.............................. | $100 | 00 | | |
| Feb. 26, '76.......................... | 50 | 00 | | |
| Oct. 15, '78..................... | 100 | 00 | | |
| Nov. 23, '78...................... | 50 | 00 | | |
| Jan'y 7, '79......................... | 50 | 00 | | |
| Jan'y 28, '81......................... | 100 | 00 | | |
| | | | $450 | 00 |
| Bal. due............................ | | | $3,389 | 95 |
| By error in sqr. 575, lot 9, $337.18............ | | | 33 | 73 |
| Bal........................................ | | | $3,356 | 23 |

Int. on balance from Sept. 15, 1881.

To this declaration the plaintiff pleaded, to the first count, "*nil debet,*" and to the second, "*non assumpsit.*" Issue being joined, the parties went to trial. Whereupon, the plaintiff testified, *inter alia,* to his having been given by the defendant a power of attorney, dated February 18, 1875, authorizing plaintiff—

"To prosecute to final settlement, subject to my orders, all claims that I have or may have against the late Board of Public Works for damages and compensation on special improvements now pending before the Board of Audit, or that may hereafter be presented to said board." That on the 12th of November, 1878, the defendant, at the request of the plaintiff, notified the Commissioners of the District

as follows: "Solomon J. Fague is my authorized attorney, to prosecute my claims for drawbacks for old material or over assessments on all my property in the District of Columbia, and also on Louise Home property." That the rate of compensation agreed on under the first power of attorney was "ten per centum of the amount that may be recovered or paid to the respective claimants." That plaintiff made measurements of streets and estimates of damages, and for old material, and filed claims in behalf of defendant before the Board of Audit, sworn to by the defendant. That the claims filed before said board for defendant for damages done to his property amounted to between $30,000 and $40,000, of which the sum of $400 was allowed before said board was abolished by act of Congress, approved March 14, 1876; and that claims filed by plaintiff for defendant for drawbacks for old material amounted to the sum of $33,000, but plaintiff did not know the amount recovered. That after the passage of the act of Congress, entitled, "An act to provide for the revision and correction of assessments for special improvements in the District of Columbia, and for other purposes," approved June 19, 1878, plaintiff, as attorney for defendant, filed with the Commissioners of the District a claim or complaint under said act of Congress, for the revision and correction of assessments upon property belonging to defendant, said claim or complaint also showing the items of real estate owned by the defendant in the District. That in the matter of the abatement of taxation upon the "Louise Home" property, plaintiff, pursuant to the directions of defendant, presented a bill to the Congress of the United States for the exemption of said institution from taxation, which bill, after amendment, was passed. That plaintiff filed no affidavits under said act of Congress providing for revision, in his opinion none being necessary under the law, but made special statements orally or in writing. That the revision of the "Henry D. Cooke" assessments consisted in striking off two-thirds of the sum of the assessments. That to realize the credits on the "Emery" assessments an act must be passed by Congress,

and that an act of Congress was necessary to secure credits where payments were made of special assessments after June 19th, 1878, and before revision.

That from the time of the close of the Board of Audit, March 14, 1876, to December, 1877, plaintiff had been constantly working for the defendant to secure reductions in assessments.

The testimony for plaintiff being closed, the defendant offered the testimony of the clerk in charge of the special assessment division, who testified that certain rules for the government of his office were passed and promulgated by the Commissioners on the 19th of July, 1878; that the 10th section of said rules provides as follows: "The revision of the special assessments will be based on the official records of the District, but where these are defective or insufficient, evidence for claimants for drawbacks will be accepted, but only in the form of an affidavit." * * * * "Persons interested in any special assessment can obtain all information in respect to it without intervention of any one by application at the office of the clerk in charge of special assessments, room 6, District Office."

That these rules were relied on and followed in the operations of revision; that by reason of the large number of complaints filed, no attention was paid to them, and that revisions were made whether complaints were filed or not. Specific errors were rarely given in complaints. That the official records of the District of Columbia furnished all the evidence relied on; and if these proved defective or insufficient, then evidence was received under the rule.

That the special cases filed by plaintiff for defendant had reference mainly to squares 186 and 200 in the city of Washington, in which the reductions, as shown from the records, amounted to the sum of $2,352.02; that plaintiff filed a few cases for triangular lots, in which detailed information was given and reductions allowed, which formed rules for similar cases.

That the revision of the assessments against the "Louise Home" was made by the Commissioners prior to the pas-

sage of the acts of Congress providing for revision of assess-
ments, but subsequent, in point of time, to measurements
thereof made by plaintiff on Massachusetts avenue, from
New Jersey avenue to Boundary, and reported to Congress
by the Commissioners to show the necessity for such acts,
and that after the passage of said acts no material change
was made in said revision.

That certain assessments, which were suspended in April,
1877, were first suspended at the request of the officer in
charge of special assessments, and were annulled after the
passage of the acts providing for revision, because the work
had not been fully completed.

That where payments of assessments had been made after
June 19, 1878, and before revision, no drawback could issue
or credit be allowed; but this was done in one case.

"That the "Henry D. Cooke" assessments had been made
prior to the passage of the acts providing for revision of
assessments in the District of Columbia, and that the sheets
containing such assessments had been in the office of the
collector of taxes of said District, and were ordered into
custody of witness about June 19, 1878, the result of the
revision being to return two-thirds of the assessment to the
taxpayer, being a mere arithmetical calculation.

That in the case of "Emery assessments" no drawbacks or
credits could be issued under the law. Plaintiff was dili-
gent in the office with oral discussion, which did not influ-
ence action in the revision; but these discussions resulted in
some cases in overruling the action of his office. The
defendant also offered the testimony of the officer in charge
of said special assessment division, that the said rules passed
and promulgated as aforesaid were acted under in said
division, and that the official records furnished all the evi-
dence for revision, except where insufficient or defective,
when evidence under the rule was required.

That witness had examined the particulars of demand
filed with the declaration in this cause, and that of the sum
claimed to have been made by way of reduction, $4,339.20
is claimed for what are known as "Henry D. Cooke

revisions;" $1,697.87 is claimed for what are known as "Emery assessments;" $646.63 is claimed for reduction in assessments paid before revision and after June 19, 1878; $329.22 is claimed for annullment of assessments paid before revision and after June 19, 1878; $2,436.83 is claimed for assessments suspended in April, 1877, and finally annulled after June 19, 1878, and before payments; $3,193.20 is claimed for reductions made in assessments on the "Louise Home" by the Commissioners of the District of Columbia; $6,687.63 is claimed to have been exempted by act of Congress; $5,823.56 is claimed as a difference between the interest charged on the unrevised assessment and that charged on the revised assessment.

The testimony being closed, the defendant, among other prayers, requested the court to grant the following:

*Sixth Prayer :* "If the jury find from the evidence that the Commissioners, in revising and correcting erroneous or excessive charges in respect to unpaid assessments, promulgated, and, in fact, acted upon the rule, that where the Board of Public Works had executed contracts made by the corporation of Washington, and had assessed the entire cost of the improvements embraced in such contracts upon private property, only one-third of such cost should be assessed against private property ; and if the jury further find that this rule and the promulgation thereof were well known to the plaintiff before he performed any services for the defendant, touching the revision or correction of what are called the " Cooke assessments," and that the revision of the said " Cooke assessments " upon the property of the defendant, consisted merely in the process of striking off two-thirds of the amount of the original assessments, as shown upon the records of the District, charged against the said property, and that the said revision was in fact made prior to the passage of the acts of Congress, approved June 19, 1878, and July 27, 1879, providing for the revision of special assessments of the District of Columbia, then the jury are instructed as matter of law that this reduction of such assessments by the Commissioners, in conformity to

their general rule, cannot, in the absence of proof of services contributed by the plaintiff to effect the reduction, be made the ground of recovery by him against the defendant."

*Eighth Prayer:* "If the jury believe from the evidence that of the amount of reductions claimed to have been effected by the said plaintiff the sum of $1,697.87, or other sum is claimed by reason of what is known as ‘Emery assessments,’ the jury are instructed as a matter of law, that no authority exists for the issuance of drawbacks or other credits for such reductions, and plaintiff's claim for such reductions must be disallowed."

*Eleventh Prayer:* "If the jury find from the evidence that, of the reductions claimed to have been effected by the plaintiff upon the property of the defendant the sum of $2,436.83 is claimed by reason of the cancellation before payment of special assessments for certain grading which was commenced prior to April 10, 1877, but which was not completed at the time of such cancellation; and if the jury further find that on April 10, 1877, all assessments for grading which was not then completed were suspended throughout the District by a general order of the Commissioners, which said general order was made for the first time at the instance of the engineer commissioner of the District of Columbia, and that during such suspension, and by the like order, and subsequent to July 27, 1879, all assessments for grading throughout the District were taken up for examination in fixed and regular turns by streets and avenues, and by the like order, directed to be completely cancelled, whether the grading at the time of such examination was found to be uncompleted, then the jury are instructed, as matter of law, that the plaintiff can recover no compensation on account of such cancellation, without showing affirmatively that his services were directed to securing it."

*Nineteenth Prayer:* "For any services by the plaintiff, performed before Congress or any committee or member thereof, in securing or providing legislation in respect to special assessments in the District, the plaintiff cannot recover in this action."

All of which prayers the court refused to grant, and exceptions being taken, the case came to the General Term. It should be here observed, that only so much of the testimony and of the rulings of the court as have reference to the points decided by the court in General Term are given in the foregoing statement of the case.

H. O. & R. CLAUGHTON and F. E. ALEXANDER for plaintiff.

C. M. MATTHEWS and JOHN SELDEN for defendant:

Of the reductions claimed in the bill of particulars to have been effected by the plaintiff, the sum of $4,339.20, upon which the plaintiff claimed a commission of ten per cent., was claimed upon what is known as the "Henry D. Cooke revision."

This class of assessments, though made subsequent to the act of Congress of February 21, 1871, had been charged in their entirety upon private property, notwithstanding that, by the 37th section of that enactment, there could be rightfully assessed against such property only a "reasonable proportion of the costs of the improvement, not exceeding one-third of such cost."

But by act of legislative assembly, December 19, 1871, it had been provided that all improvements made after the passage of the act of Congress of February 21, 1871, should "be assessed in accordance with the requirements of the 37th section of that act."

The "Henry D. Cooke assessments" had lain in the office of the collector of taxes for the District, and were ordered into the custody of the clerk of the special assessment division of the District about the 19th day of June, 1878.

It was admitted by the plaintiff, at the trial, that the revision of these assessments "consisted in striking off two-thirds of the sum of the assessments."

The revising officer of these assessments declared that the process of revision was "a mere arithmetical calculation."

The defendant was entitled to have the jury informed

that under the provisions of the act of the legislative assembly of December 19, 1871, he became lawfully entitled to drawbacks upon the Henry D. Cooke assessments, upon the payment thereof.

This was an element fairly to be considered by the jury, in determining the nature and value of the services performed by the plaintiff in relation to those assessments.

This instruction the court declined to give.

As to the Emery assessments, there was evidence tending to show that of the amount of reductions in assessments claimed in the bill of particulars to have been effected by the plaintiff, the sum of $1,697.87 was claimed on account of reduction in what were known as the Emery assessments.

The act of Congress of June 19, 1878, authorized the revision of *unpaid* assessments only, and it was only in case of assessments that were *paid* before June 19, 1878, that revisions or corrections were authorized by the act of July 27, 1879.

There was also evidence tending to show that upon the Emery assessments no drawbacks or credits could be issued under existing laws, and that, as was conceded by plaintiff, an act of Congress was required to realize such credits.

The defendant desired the court to instruct the jury that, if they believed what the evidence thus tended to show, there was no authority for the issuance of drawbacks or credits for reductions upon the Emery assessments, and that the claim of the plaintiff for effecting reductions upon those assessments must be disallowed.

This instruction the court refused to give.

It is clear there existed no authority of law to make these reductions.

And it requires an act of Congress, not only to ratify the reductions thus made, but to make them available by way of drawbacks or credit to the defendant.

Congress may never act upon the subject.

The defendant has derived no benefit whatever from the

27

alleged services of the plaintiff in respect of these assessments.

The contingency upon which the plaintiff was entitled to compensation, if at all, in this particular, has not happened.

And the action as to those services is, at least, premature.

The 19th prayer of the defendant was directed to the alleged services of the plaintiff in procuring *general* legislation upon the subject of special assessments in the District.

In that prayer, the court was requested to instruct the jury that the plaintiff could not recover for any services performed before Congress, or any committee or member thereof, in securing or providing legislation in respect to special assessments in the District.

Services for procuring general legislation in respect to assessments in the District, could not be given in evidence under the first count of the declaration, since nothing was provable under that count beyond the items embraced in the bill of particulars annexed to such count, and the bill of particulars contains no claim for any such services.

The object of a bill of particulars is to apprise the defendant of what he must be prepared to meet at the trial, and the bill can furnish no such information if the plaintiff be not bound by it.   4 Rob. Prac., 899; De Sobry *vs.* De Laistrey, 2 Har. & J., 191.

Nor could any recovery for such services be had under the second count of the declaration, since that count only embraces services claimed to have been rendered before the Board of Audit and the Commissioners of the District.

It may be said, however, that there was no allowance made by the jury to the plaintiff for services in procuring general legislation as to special assessments in the District of Columbia.

But it is impossible to affirm with certainty that such services were unconsidered by the jury in reaching their ultimate conclusion upon the case.   And if those services formed an element in determining the verdict, they entered, of necessity, into the recovery.

Mr. Justice JAMES delivered the opinion of the court.

The court has decided to send this case back for a new trial. Some nineteen prayers were requested of the court below, of which two were granted and seventeen refused. Of these, we think the sixth, eighth, eleventh and nineteenth should have been granted. The sixth prayer relates to what are known as the " Cooke assessments," in which the whole cost of a street improvement had been assessed upon the adjoining property, instead of only one-third of the cost. And the prayer in substance was that if the Commissioners had adopted a general rule whereby all such assessments were cut down two-thirds then the plaintiff could not recover for this reduction, unless there was some proof that he contributed some specific service to that end. We think it plain that unless there was some proof of services rendered by the plaintiff in effecting this reduction of two-thirds of the assessment, he would not be entitled to recover for that item of his bill. The prayer was quite applicable to the issue involved, and should have been granted.

The eighth prayer related to the plaintiff's claim for effecting reductions in what is known as the "Emery assessments," and the court was requested to instruct the jury that if, as a matter of law, no provision existed for the issuance of drawbacks or other credits for such reductions, the plaintiff's claim for obtaining such reductions must be disallowed. We think this prayer should also have been granted. So, too, the eleventh prayer, in relation to certain grading which had been commenced, afterwards discontinued and the assessments cancelled by a general order of the Commissioners, the court was requested to instruct the jury that the plaintiff could not recover any compensation on account of this cancellation of the assessment without showing that his services were directed to securing it. This prayer rests upon the same principle of law governing the sixth prayer, and should have been granted.

Finally, in prayer nineteen, the court was asked, but refused, to instruct the jury that for any services performed by

the plaintiff before Congress, or any committee or member thereof, in securing or providing legislation in respect to special assessments on the defendant's property, the plaintiff cannot recover. There is a special reason in this case why this prayer should have been granted. The second count of the declaration had no reference to this claim, so that it could only be recovered, if at all, under the common counts, with the bill of particulars annexed. But, in the bill of particulars, there is no claim for any such service. The bill of particulars defines the application of the common counts, and is a part of the pleading under our system. It apprises the defendant what it is the plaintiff expects to recover on, and if there is no claim made in the bill of particulars for services before a committee of Congress in procuring this general legislation, it follows that no recovery can be had for such services, even if they had been rendered. This item should, therefore, have been disallowed. When the case goes back, the court below may allow an amendment of the bill of particulars, so as to add a charge for services of that kind, if the plaintiff wishes to include it in his recovery.